NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3165
_____

VICTOR L. YU, M.D.,
                              Appellant

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS;
MICHAEL E. MORELAND, officially and individually;
RAJIV JAIN, officially and individually; UNITED STATES OF AMERICA;
THE SECRETARY OF VETERANS AFFAIRS; MONA MELHEM, officially and
individually; ALI SONEL, officially and individually; STEVEN GRAHAM,
officially and individually

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-08-cv-00933
Magistrate Judge: The Honorable Maureen P. Kelly

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 17, 2013

Before: SMITH, FISHER, and CHAGARES, *Circuit Judges*

(Filed: June 4, 2013)
_____

OPINION
_____

SMITH, *Circuit Judge.*

Dr. Victor Yu appeals the dismissal of his claims against the Department of

Veterans Affairs, the United States, and several employees of the VA in their official and individual capacities. The District Court dismissed his *Bivens* damages claims, Privacy Act claims, and Administrative Procedures Act claims for lack of jurisdiction because the claims should have been brought under the Civil Service Reform Act, which establishes the exclusive method of reviewing most of the federal government's personnel decisions. The Court granted summary judgment in favor of the defendants on Yu's *Bivens* claims seeking equitable and declaratory relief for alleged violations of his First and Fifth Amendment rights. Our standard of review is *de novo*. *See Ballentine v. United States*, 486 U.S. 806, 810 (3d Cir. 2007) (explaining that we review Rule 12(b)(1) motions to dismiss *de novo*); *Doe v. Luzerne Cnty.*, 660 F.3d 169, 174 (3d Cir. 2011) (explaining that we review summary judgment motions *de novo*). We will affirm the District Court's order for reasons similar to those set forth in its well-reasoned and thorough opinion.[1]

This case arises from the termination of Yu's employment at the VA Pittsburgh Health Care System and the closing of the VA Special Pathogens and

---

[1] The District Court ostensibly had federal-question jurisdiction under 28 U.S.C. § 1331 and under the Privacy Act's grant of jurisdiction in 5 U.S.C. § 552a(g)(1). The Court ultimately decided that it did not have power to hear some of the claims asserted because jurisdiction was foreclosed by the Civil Service Reform Act. Its power to decide that it lacked jurisdiction was part of its jurisdiction to determine its own jurisdiction. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 358–59 (1947). The parties consented to final resolution of the case by a Magistrate Judge under 28 U.S.C. § 636(c)(1). Our jurisdiction is provided under 28 U.S.C. § 1291.

Clinical Microbiology Laboratory in Pittsburgh. In January 2006, the VA audited the Lab, which was headed by Yu, and determined that the Lab was operating at a loss. Furthermore, the audit found that the Lab was operating beyond the scope of its mission to serve veterans by conducting itself like a commercial enterprise. Yu disputes this latter finding, arguing that the VA approved the Lab's conduct.

That summer, the VA decided to close the Lab on July 10, 2006. Yu was notified of this decision five days before the closure and was told to stop accepting new material for testing. On Yu's request, the closure was postponed to July 21, but the VA reiterated that he was not supposed to be accepting more testing material from outside sources. Yu did not comply, instructing his technicians to continue accepting and testing samples from other hospitals. He also asked the VA for a written rationale for the Lab's closure and made several statements to the local media advocating against its closure. The VA ignored his request and his advocacy, closing the Lab on July 21 as planned.

That same day, Yu was placed on nonduty status and was prohibited from entering the VA facility. The defendants contend that this was a consequence of his insubordination in refusing to comply with the VA's instruction to stop accepting samples from other facilities. Yu argues that this was in retaliation for his statements to the press. The VA conducted a more in-depth investigation into Yu's conduct and other concerns with the Lab's operation. This investigation concluded

3

that Yu failed to comply with orders and had misrepresented the Lab's work. The report recommended Yu's termination, and he was dismissed on August 18, 2006.

The viability of his *Bivens* damages, Privacy Act, and APA claims depends on whether our review of the defendants' misconduct alleged in these claims would be sufficiently distinct from review of personnel decisions under the Civil Service Reform Act. This Act provides an exclusive method for federal civil servants to obtain damages for personnel decisions that violate statutory, regulatory, or constitutional rights. *See Bush v. Lucas*, 462 U.S. 367, 388 (1983); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 795 (3d Cir. 2003) (holding that a *Bivens* damages claim was foreclosed by the Act because it "provides the full scheme of remedies available" to civil servants for actions "arising out of the employment context"); *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) ("[W]e have held that [the Civil Service Reform Act's] comprehensive employment scheme preempts judicial review under the more general APA even when that scheme provides no judicial relief—that is, what you get under the CSRA is what you get." (citation and quotation marks omitted)); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337–38 (D.C. Cir. 1992) ("This court has refused to allow the exhaustive remedial scheme of the CSRA to be impermissibly frustrated . . . by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially

unreviewable under the CSRA." (citations and quotation marks omitted)).

Yu argues that the Act is irrelevant because his complaint is not about a personnel decision that is reviewable under the Civil Service Reform Act. Specifically, he points to his allegations that the defendants withheld research equipment and funds that he had secured for the Lab as well as to the VA's decision to destroy research samples. All of these actions took place after his termination, which Yu argues shows that they are not related to the personnel decision to terminate his employment.

We agree with the District Court that the VA's actions are personnel decisions because they "occurred only as a result of the employment relationship" Yu had with the VA. *See Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989). The VA's decision to terminate Yu falls within the Civil Service Reform Act's definition of personnel actions. *See* 5 U.S.C. § 2302(a)(2)(A) (defining personnel action to include, among other actions, "disciplinary or corrective action" as well as "any other significant change in duties, responsibilities, or working conditions"). The VA's subsequent decisions to retain possession of the equipment and funds and to destroy the samples obtained by Yu are also personnel decisions because they centrally relate to Yu's employment relationship with the VA. In other words, "the violations complained of . . . occurred only as a result of the employment relationship," *Lombardi*, 889 F.2d

5

at 961—and, more particularly, occurred only as a result of the specific personnel decision made. Consequently, Yu's allegations against the VA challenge personnel decisions that ought to have been brought under the Civil Service Reform Act's procedures, which exclude federal court jurisdiction under the causes of action asserted in this case. *See id.* (rejecting a plaintiff's argument that the damages he sought were separate from his employer-employee relationship because they occurred after the relationship was terminated). The Civil Service Reform Act thus forecloses Yu's damages claims.

That leaves only his *Bivens* claims for equitable and declaratory relief based on violations of the First and Fifth Amendments. We agree with the District Court that none of these claims survive the defendants' motion for summary judgment. Yu's First Amendment retaliation claim fails because there is insufficient evidence that his statements to the media were a substantial or motivating factor in the decision to terminate his employment. *See Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). He primarily relies on the sequence of events as evidence: his statements were published in a July 19 article, a letter of suspension was received on July 21, and—after a more extensive investigation of his conduct and the Lab's work—he was terminated on August 18. Temporal proximity can reveal that Yu's termination was retaliation for his statements if the proximity is "unusually suggestive"—meaning within a few days

but no longer than a month. *Id.* at 760 & n.4. In our view, the nearly one-month delay between publication and termination is too long to be "unusually suggestive."[2] Yu's argument is further undercut by his insubordinate decision to continue accepting new samples contrary to the VA's order to stop doing so, which gave the VA reason to fire him. In light of the length of the temporal proximity and the evidence of his insubordination, no reasonable jury could find that Yu's termination was retaliation for his public statements.

Yu also argues that the VA's investigation violated his liberty interest under the Fifth Amendment. "[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). For public employees, this test is satisfied when "an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Id.* (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)) (quotation marks omitted). Yu's claim fails because he has not produced any evidence that the allegedly false statements were disseminated. To be sure, at least three people within the Veterans Research Foundation of Pittsburgh and the Dean of the University of Pittsburgh School of Medicine were

---

[2] Given that one month is too long, Yu's argument that the samples were destroyed in retaliation also fails. The samples were destroyed in December 2006, five months after his statements.

aware of the investigation and its results. But this evidence does not show dissemination because these two organizations were essentially operating partners with the VA and the Lab, so their notification of the VA's investigation was not publication to the general public. *See Chabal v. Reagan*, 841 F.2d 1216, 1224 (3d Cir. 1988) (finding no liberty-interest violation because the plaintiff made "no allegation whatsoever that the government communicated to the general public any information regarding the reasons for his dismissal").

Finally, Yu argues that the defendants violated his Fifth Amendment due process rights because they destroyed samples submitted to the Lab and refused to release money he had raised for the Lab. These claims fail because Yu cannot establish that he had a property interest in the samples or the funds. *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 570–71 (1972) (explaining that a property interest is a prerequisite for a successful due process claim). To have a property interest, a person "must have more than a unilateral expectation to it" but "must, instead, have a legitimate claim of entitlement to it." *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (quoting *Roth*, 408 U.S. at 577). Yu has not established a claim of entitlement to either the samples or the funds. The samples were submitted to the Lab, which operated as a part of the VA. And despite Yu's claim that there was a binding agreement to transfer the samples to him, there is no evidence of any such agreement—the e-mails he relies on show only that the

8

transfer was requested and the requirements were explained.

Yu also cannot establish a claim of entitlement to the funds donated by outside groups for the Lab. These funds were donated to Veterans Research Fund, which Congress set up as a nonprofit corporation to provide the VA with flexible funding sources for its research. *See* 38 U.S.C. § 7362(a). Yu argues that he is entitled to money contributed to this fund for his research because at least one contributing organization, Binax, Inc., submitted a letter explaining that its contribution was to be used by Yu "at his discretion." This letter cannot, however, alter the federal law relating to funds donated to the Veterans Research Fund— specifically, that the funds are to be used by the nonprofit corporation only to further the caring for and treatment of veterans, 38 U.S.C. §§ 7303, 7364, and the absence of any right by researchers to control the funds that they solicit. Absent this right, Yu lacks a property interest in the funds solicited for the Lab.

For the reasons above, we will affirm the District Court's order.

9