PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-3463

AYYAKKANNU MANIVANNAN,

Appellant

v.

UNITED STATES DEPARTMENT OF ENERGY;
UNITED STATES OF AMERICA

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-00297)
Magistrate Judge: Honorable Maureen P. Kelly

Argued on November 18, 2021

Before: AMBRO, JORDAN, and ROTH, <u>Circuit Judges</u>

(Opinion filed: July 26, 2022)

Dylan F. Henry
John J. Powell **(Argued)**
Kimberly L. Sachs
Montgomery McCracken Walker & Rhoads
1735 Market Street
21st Floor
Philadelphia, PA 19103

Counsel for Appellant

Laura S. Irwin
Matthew S. McHale **(Argued)**
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

Counsel for Appellees

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Ayyakkannu Manivannan, a former government scientist, resigned from his job with the U.S. Department of Energy following allegations of disturbing actions taken against an intern. The allegations prompted both an internal investigation and a state criminal prosecution. Manivannan has since filed several lawsuits relating to those events, including this one. Here he asserts Privacy Act, 5 U.S.C.

2

§ 552a, and Federal Tort Claims Act ("Tort Claims Act"), 28 U.S.C. § 1346(b) and §§ 2671–80, violations stemming from the agency's disclosure of records to state prosecutors, its alleged negligence in conducting the internal investigation, and its refusal to return his personal property.

At issue is whether the Magistrate Judge properly dismissed these federal statutory claims for lack of subject matter jurisdiction. The Magistrate Judge held them precluded by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*, because they arose in the context of Manivannan's federal employment. We hold that a narrower inquiry is required. Under this inquiry, much of the conduct challenged by Manivannan still falls within the CSRA's broad purview, such that the Magistrate Judge was right to dismiss on jurisdictional grounds. But some of that conduct does not. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Manivannan asserts he is one of the leading materials scientists in the United States. He was hired by the federal Department of Energy ("DOE") in 2005 and assigned to the National Energy Technology Laboratory in Morgantown, West Virginia.

Conflict best defined Manivannan's time at the DOE. He was mired in disputes with his supervisors, including Dr. Randall Gemmen. Their feud began in 2010, when one of Gemmen's mentees removed Manivannan's co-author attribution from a paper. That incident ended with Gemmen "screaming loudly" at Manivannan in front of others and

3

transferring him to a new research division. J.A. 152. In 2013, he was transferred again, this time to a research division supervised by Mary Anne Alvin, who reported to Gemmen. Alvin and Gemmen purportedly continued to target Manivannan in several ways: they allegedly imposed on him arbitrary requirements not imposed on other researchers, terminated his research, and relocated his office.

A more serious conflict was to follow. In 2015, Gemmen and Alvin learned from an administrator at Pennsylvania State University that a former DOE student-intern had alleged a sexual relationship with Manivannan and accused him of inappropriate and abusive behavior. The DOE began an internal investigation, titled a "Management Directed Inquiry," and placed Manivannan on administrative leave. The investigation—conducted by outside counsel Marissa Williams with assistance from Mark Hunzeker, a DOE lawyer—resulted in a final report quite unfavorable to Manivannan. *See generally Manivannan v. Dep't of Energy*, No. PH-1221-18-0230-W-3, 2020 WL 1130149 (M.S.P.B. Mar. 4, 2020).

Meanwhile, the District Attorney for Centre County, Pennsylvania, was pursuing criminal charges against Manivannan based on his alleged misconduct. In March 2015, he was charged with two misdemeanors: stalking and harassment. Hunzeker reached out to the prosecutors early the next year and offered them information he thought could aid their case. Following that conversation, the Commonwealth charged Manivannan with five felony counts of unlawful use of a computer premised on the theory that on several occasions he hacked into the intern's email account.

4

Manivannan alleges that Hunzeker encouraged the state prosecutors to subpoena the DOE for internal records relating to Manivannan, even drafting the subpoena himself. Responding to that subpoena, Hunzeker produced several DOE records, "including the internal investigation report and approximately 1,500 pages of . . . e-mails, time and attendance records, travel records, telephone records, and other records." J.A. 186. He allegedly continued to communicate with the prosecutors, providing them with information throughout their pretrial preparations.

Following a two-day trial, the jury acquitted Manivannan of stalking but convicted him of harassment and unlawful use of a computer. He appealed and the Pennsylvania Superior Court vacated the convictions, holding (among other things) that certain evidence regarding Manivannan's alleged hacking was improperly admitted. *See Commonwealth v. Manivannan*, 186 A.3d 472, 488–89 (Pa. Super. Ct. 2018). It remanded for a new trial. *Id.* at 489. On remand, the state prosecutors dismissed the charges with prejudice.

Shortly before the criminal trial, the DOE began removal proceedings against Manivannan. He resigned from his position before he could be fired. His separation from the DOE was documented in a Standard Form 50 ("Form 50") that states: "Agency finding: Resigned after receiving written notice on April 8, 2016, of proposal to separate due to employee misconduct." J.A. 180. The DOE refused to allow Manivannan or his attorney to collect his personal belongings—including custom-built diamond sensor electrodes—from his office following his resignation.

5

*A. Post-Resignation Litigation*

Manivannan then launched a series of lawsuits. In April 2017, he filed a *pro se* complaint in West Virginia state court seeking to recover his personal belongings. *See Manivannan v. Bochenek*, No. 17-cv-216, 2018 WL 3069202, at *1 (N.D.W. Va. Feb. 21, 2018). That case was removed to federal court and then dismissed for failure to exhaust administrative remedies. *Id.* at *1, *4.

Later that year, Manivannan filed another *pro se* complaint, this time in the U.S. District Court for the Northern District of West Virginia. It again sought return of his personal property as well as to compel the DOE to produce certain documents under the Freedom of Information Act. That Court dismissed the property-return claim (again on exhaustion grounds) but allowed the document-request claim to proceed. On appeal, the U.S. Court of Appeals for the Fourth Circuit affirmed in part, reversed in part, and remanded for further proceedings. *See Manivannan v. Dep't of Energy*, 843 F. App'x 481, 484–85 (4th Cir. 2021).

Most relevant here, Manivannan also filed a complaint with the federal Office of Special Counsel asserting that several of the personnel decisions made by the DOE during his employment were intended to punish him for protected conduct. *See Manivannan*, 2020 WL 1130149. He challenged (1) a 2011 department transfer, (2) the initiation of the 2015 internal investigation, (3) a 2014 department transfer, (4) a change in duties after the termination of a research project, (5) his proposed removal, and (6) his supervisors' alleged creation of a hostile work environment. *Id.* Manivannan asserted that these personnel decisions were made to retaliate

6

against him for "whistleblowing" on Gemmen, Alvin, and others for abusing their authority. *Id.*

The Office of Special Counsel declined to pursue Manivannan's complaints. In March 2018, he appealed that decision to the Merit Systems Protection Board (an executive branch agency authorized to hear such appeals). An administrative judge found that Manivannan failed to establish a *prima facie* case of whistleblower retaliation. *See id.* The judge also noted, without analysis, that he "did not deem the [DOE's] cooperation with the prosecutor's office a personnel action" implicating the Board's jurisdiction. *See id.* at n.8. Manivannan appealed to the U.S. Court of Appeals for the Federal Circuit, which affirmed without opinion. *See Manivannan v. Dep't of Energy*, No. 20-1804, 2021 WL 4735304 (Fed. Cir. Oct. 12, 2021).

*B. This Action*

In March 2018, Manivannan (now counseled) sued in the U.S. District Court for the Western District of Pennsylvania, alleging that the DOE's production of records to state prosecutors violated the Privacy Act. He filed a separate action in that District the next year asserting three Tort Claims Act violations against the DOE. The cases were consolidated, and Manivannan filed a single amended complaint asserting seven counts.

Two counts alleged that the DOE violated the Privacy Act by disclosing information and records to state prosecutors without Manivannan's consent (Count I), along with failing to (a) ensure the accuracy and completeness of the internal investigation report and (b) maintain an accurate Form 50

7

(Count II).  Five counts were brought under the Tort Claims Act: a conversion claim premised on the DOE's refusal to return Manivannan's personal property (Count III), negligence claims tied to its internal investigation and failure to maintain an accurate Form 50 (Counts IV and V), an invasion-of-privacy claim arising from Williams's conduct during the internal investigation (Count VI), and an intentional-infliction-of-emotional-distress claim resting on Hunzeker's cooperation with the state prosecutors (Count VII).

The Government moved to dismiss the complaint in its entirety for lack of subject matter jurisdiction.  Specifically, it argued that the CSRA barred Manivannan from bringing his employment-related claims in a federal district court.  It further submitted that the Tort Claims Act counts should be dismissed as untimely and, alternatively, as meritless.

The Magistrate Judge accepted the Government's jurisdictional argument without addressing its other grounds for dismissal.  She held that, "regardless of the existence of separate remedies under the Privacy Act or under common law as to his [Tort Claims Act action], Manivannan's claims arise *because of* his DOE employment and thus must be pursued through the CSRA review process."  J.A. 14 (emphasis in original).  He appeals that conclusion to us.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1346(b)(1).  The Magistrate Judge exercised jurisdiction over the proceedings via the parties' consent under 28 U.S.C. § 636(c)(1).  We have jurisdiction to review the Magistrate Judge's dismissal order under 28 U.S.C.

8

§§ 636(c)(3) and 1291.[1]

We review anew (*de novo*) an order dismissing a claim for lack of subject matter jurisdiction. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A jurisdictional challenge may be facial (in that it attacks the complaint without disputing its allegations) or factual (by presenting competing facts undermining federal jurisdiction). *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Because the challenge here is facial, we accept the complaint's well pled allegations as true, *id.*, and review "the allegations of the complaint and documents referenced therein and attached thereto[] in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).[2]

---

[1] Manivannan also moved for reconsideration of the Magistrate Judge's dismissal order. While that motion was pending, he filed his notice of appeal of the dismissal order, which became effective on the Magistrate Judge's denial of reconsideration. Fed. R. App. P. 4(a)(4)(B)(i). He did not, however, file a new or amended notice of appeal relating to the denial of reconsideration. We thus lack jurisdiction to review that second decision. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *United States v. McGlory*, 202 F.3d 664, 668 (3d Cir. 2000) (en banc).

[2] Manivannan argues that the District Court erred in considering the Protection Board judge's decision and the decisions of the Pennsylvania state courts in his criminal proceedings. But even if that were error—and we make no comment on that—it is harmless because the jurisdictional issue here can be resolved without reliance on information from those materials.

### III.  Discussion

Ostensibly, this is a Privacy Act and Tort Claims Act lawsuit.  Those are federal claims, and a federal court would normally have jurisdiction to review them (assuming all other jurisdictional requirements are met).  *See* 28 U.S.C. § 1331.  Our question here is whether the substance of Manivannan's claims makes them unreviewable per a different federal statute, the CSRA.

That Act governs the rights and obligations of most federal employees.  As we will explain, it provides exclusive administrative and judicial review procedures for disputes falling in its ambit.  The Government, construing the statute broadly, submits that its exclusive review procedures bar a federal court from exercising jurisdiction over any claim "aris[ing] in the [federal] employment context."  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam).  If so, none of Manivannan's claims may be heard in a district court because they all clearly arose in the context of his work with the DOE.  But the CSRA does not sweep so wide.  Rather, for reasons discussed below, it precludes a court from addressing an otherwise reviewable claim only if that claim challenges an employment matter covered by the statute.

### A.  CSRA Preclusion

Before the CSRA's enactment, "courts routinely exercised jurisdiction to review a variety of administrative actions against [federal] employees, such as denials of promotions and denials of leave requests."  Barbara A. Atkin, Elaine Kaplan & Gregory O'Duden, *Wedging Open the Courthouse Doors: Federal Employee Access to Judicial*

10

*Review of Constitutional and Statutory Claims*, 12 Emp. Rts. & Emp. Pol'y J. 233, 244 (2008).  But this "patchwork" system of review led to "wide variations in the kinds of decisions . . . issued on the same or similar matters."  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 13–14 (2012) (alteration in original) (quoting *United States v. Fausto*, 484 U.S. 439, 444–45 (1988)).

The CSRA, by contrast, offers "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."  *Fausto*, 484 U.S. at 445.  It does so by channeling certain employment disputes—primarily, those arising from "actions based on unacceptable job performance," "adverse action[s]," and "prohibited personnel practices"—to the Merit Systems Protection Board, with judicial review of its decision available in the U.S. Court of Appeals for the Federal Circuit.  *See id.* at 445–47 (internal quotation marks omitted); *see also* 5 U.S.C § 4303 (covering "[a]ctions based on unacceptable performance"); *id.* §§ 7501–43 (covering adverse actions); *id.* § 2302 (covering "[p]rohibited personnel practices").

In *Elgin*, the Supreme Court examined the CSRA's "text, structure, and purpose" to hold that where the statute grants an employee administrative and judicial review of a claim, it bars that employee from seeking review beyond what the statute allows.  567 U.S. at 10–11.  The plaintiffs there were fired from their federal employment for failing to comply with the Military Selective Service Act and sought to challenge that Act in district court on constitutional grounds.  *Id.* at 6–7.  But the Supreme Court, looking to the underlying conduct

11

challenged by the plaintiffs, determined that their constitutional claims were merely a vehicle for reversing their terminations and returning to federal employment. *Id.* at 22. Such a dispute was, in turn, "precisely the type of personnel action" covered by the CSRA and heard regularly before the Protection Board. *Id.* Because the statute was intended to foreclose covered employees from contesting covered employment actions outside the statutory scheme, the Court held that the plaintiffs' challenge to their terminations—though dressed as a federal constitutional claim—had to proceed via the review procedures outlined in the CSRA. *Id.* at 11–12, 22–23.

And while *Elgin* considered only constitutional claims, rather than Privacy Act and Tort Claims Act claims, we are persuaded its reasoning extends to those statutory causes of action. As the *Elgin* Court noted, the CSRA's "review scheme is exclusive." *Id.* at 13. An action covered by that statute is confined to the remedies it offers. *See, e.g.*, *Mangano v. United States*, 529 F.3d 1243, 1247–48 (9th Cir. 2008) (claims brought under the Tort Claims Act challenging a CSRA-covered personnel action are precluded); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992) (same as to Privacy Act claims).

But how broad is the CSRA's preclusive scope? The Government, relying on our pre-*Elgin* decision in *Sarullo v. U.S. Postal Service*, submits that it blocks district court review whenever the plaintiff's "status as a federal employee is central to his complaint." Gov't Br. at 31 (quoting *Sarullo*, 352 F.3d at 796). But *Sarullo*, unlike this case, arose in the *Bivens* context and derives its holding from the Supreme Court's *Bivens* case law. *See* 352 F.3d at 794 n.3, 795. That case law,

12

in turn, provides a judicially created damages remedy for a handful of constitutional violations. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *Egbert v. Boule*, 142 S. Ct. 1793, 1802–03 (2022). Because such a remedy is disfavored, the Supreme Court will extend it to new contexts only where "special factors" do not counsel against doing so. *Egbert*, 142 S. Ct. at 1803. Thus in *Bush v. Lucas*—the case relied on in our *Sarullo* decision—the Court merely declined to extend *Bivens* to the federal employment context given the CSRA's expansive remedial scheme. 462 U.S. 367, 388–90 (1983) (the existence of the CSRA and its remedies is a special factor counseling hesitation in extending *Bivens* to the employment context); *see also Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961 (10th Cir. 1989) (same). So *Sarullo*'s broad rule is not necessarily persuasive here, where Manivannan is not trying to assert a *Bivens* claim.

The language of the CSRA itself supports a more tailored approach. As noted, it funnels only certain employment disputes to the Protection Board. An employee may, for instance, appeal to it "adverse actions," defined to include certain removals, suspensions, furloughs, and reductions in grade or pay. *See* 5 U.S.C. § 7512. The statute also provides for administrative review of "[p]rohibited personnel practices," meaning any "personnel action" motivated by an impermissible ground, including whistleblower reprisal and discrimination unrelated to the employee's work performance. *See id.* § 2302(a)(1), (b)(1)–(14). It specifically notes covered personnel actions:

(2) For purposes of this section—

13

(A) "personnel action" means—

(i)   an appointment;
(ii)   a promotion;
(iii)   an action under chapter 75 of this title or other disciplinary or corrective action;
(iv)   a detail, transfer, or reassignment;
(v)   a reinstatement;
(vi)   a restoration;
(vii)   a reemployment;
(viii)   a performance evaluation under chapter 43 of this title or under title 38;
(ix)   a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;
(x)   a decision to order psychiatric testing or examination;
(xi)   the implementation or enforcement of any nondisclosure policy, form, or agreement; and
(xii)   any other significant change in duties, responsibilities, or working conditions.

*Id.* § 2302(a)(2)(A)(i)–(xii).

The Government points to no statutory language suggesting that any dispute primarily involving a plaintiff's

14

federal employment needs to be heard by the Protection Board. Congress has instead carefully defined the types of employment actions subject to the CSRA's review scheme, and these statutory definitions must guide the preclusion analysis. *See, e.g.*, *Orsay v. U.S. Dep't of Just.*, 289 F.3d 1125, 1131 (9th Cir. 2002) ("In order for the CSRA to preempt a federal cause of action, the underlying conduct must involve 'personnel action,' which the statute defines."), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013); *see also Schmittling v. Dep't of Army*, 219 F.3d 1332, 1336 (Fed. Cir. 2000) (noting that the Board's jurisdiction is "limited to those matters specifically entrusted to it by statute or regulation" (internal quotation marks omitted)).

This is a narrower inquiry than the one advanced by the Government, but it is consistent with *Elgin*, which explained that whether the CSRA prevents a federal action turns on "the type of the employee *and* the challenged employment action." 567 U.S. at 15 (emphasis added). If the employee's federal suit is, "at bottom," challenging an employment action within the Protection Board's jurisdiction, then it must proceed through the review process provided in the CSRA. *Id.* at 22. Inversely, if the employee is *not* challenging an action covered by the CSRA, the Board will not have jurisdiction, and the suit must proceed in a different forum.

Thus, when assessing whether the CSRA bars federal jurisdiction over an otherwise reviewable claim, courts should look to the specific underlying conduct being challenged to determine whether that conduct is an employment action covered by the statute. *See id.*; *Orsay*, 289 F.3d at 1131; *Mangano*, 529 F.3d at 1247. Given the statute's "comprehensive" scope, *see Fausto*, 484 U.S. at 448, they need

15

not apply a "cramped construction" of its terms, *Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991). Still, the jurisdictional analysis must be tied to the employment actions set out; the mere fact that the challenged conduct occurred in the federal employment context is not enough to bring it within the CSRA's exclusive ambit.

## B. *Manivannan's Claims*

Manivannan premises his statutory claims on the following conduct: (1) Marissa Williams's failure to take reasonable measures to ensure the accuracy and completeness of the DOE's internal investigation; (2) Mark Hunzeker's disclosure of the internal investigation report and other DOE records to state prosecutors; and (3) the DOE's refusal to return Manivannan's personal property following his resignation.[3]

---

[3] Though not pressed in his briefing, Manivannan also brought claims of alleged inaccuracies in the Form 50 documenting his separation from the DOE. He aired this challenge in his whistleblower retaliation action before the Protection Board, which noted that the changes to his Form 50 were outside the scope of those proceedings but could be addressed under a different CSRA provision, 5 U.S.C. § 3322. *See Manivannan*, 2020 WL 1130149, at n.3. We agree. Section 3322 concerns an employee's voluntary resignation from government employment prior to the resolution of a personnel investigation and entitles the employee to appeal to the Board the accuracy of any adverse findings noted in his or her official personnel record file. 5 U.S.C. § 3322(a), (c). Having had access to that procedure, Manivannan cannot now use the Privacy and Tort Claims Acts to attack the contents of his Form 50 in federal court.

16

As to those claims based on the internal investigation, we are persuaded, under these specific facts, that the Magistrate Judge rightly dismissed them as precluded by the CSRA. Manivannan's complaint and its attached exhibits indicate that the internal investigation involved allegations of serious (indeed, potentially criminal) misconduct prompting the DOE to obtain outside counsel, place Manivannan on leave, and begin removal proceedings. These "extreme circumstances" were a "significant change in [Manivannan's] working conditions," thus qualifying as a personnel action under the statute. *See Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 955–56 (Fed. Cir. 2020) (distinguishing "routine" investigations, which are not personnel actions, from investigations which, "on [their] own or as part of a broader set of circumstances," comprise a significant change in working conditions); 5 U.S.C. § 2302(a)(2)(A)(xii). Fairly read, Manivannan's pleadings also indicate his belief that the investigation was impermissibly retaliatory and discriminatory (*i.e.*, that he was subjected to a prohibited personnel practice). *See* 5 U.S.C. § 2302(b)(8), (10); *see also* J.A. 226 (describing a "workplace vendetta" against him); J.A. 218 ("The intention was to destroy my livelihood . . . . Randy Gemmen initiated an investigation" and "falsely explained that the investigation was a simple management-directed inquiry . . . ."). Indeed, Manivannan himself characterized the internal investigation as a personnel action before the Protection Board, which addressed it as such. *See Manivannan*, 2020 WL 1130149. On these facts, his claims involving the internal investigation are subject to the CSRA.[4]

---

[4] It makes no difference that Manivannan's claims attack Williams's actions in conducting the investigation rather than the DOE's decision to initiate it (the specific personnel action

We cannot say the same for Manivannan's other claims. As to those caused by Hunzeker's alleged collusion, a DOE lawyer's decision to disclose an employee's records to state prosecutors is not an adverse action, *see* 5 U.S.C. § 7512, nor does it fall within any of the personnel actions noted in § 2302. And the Protection Board has already disclaimed that the DOE's alleged cooperation with state prosecutors is a personnel action covered by the CSRA.[5]  *See Manivannan*, 2020 WL 1130149, at n.8; *see also Minshew v. Donley*, 911 F. Supp. 2d 1043, 1069 (D. Nev. 2012) (unauthorized disclosure of material from employee's official personnel file is not a "personnel action"); *cf. Quinn v. Stone*, 978 F.2d 126, 128 (3d

---

challenged in his Protection Board proceedings).  Reviewing Williams's conduct would necessarily require us to review the legitimacy of the internal investigation, which would in turn infringe on territory exclusive to the Board.

[5] The Magistrate Judge held as irrelevant the Protection Board's finding that certain conduct alleged by Manivannan was not a "personnel action" under the CSRA, as a full airing of Manivannan's claims based on this conduct could still occur on appeal to the Federal Circuit.  She relied on *Elgin*, which held that the Federal Circuit has jurisdiction over constitutional claims tied to a CSRA-covered employment action, namely, the employee's allegedly unconstitutional termination.  *See Elgin*, 567 U.S. at 18–19.  Here, however, the issue is whether Manivannan has alleged conduct that would trigger the Board's jurisdiction in the first place.  Because the Federal Circuit's jurisdiction is coextensive with that of the Board in this context, *see Schmittling*, 219 F.3d at 1337, if Manivannan is not "challenging a covered adverse employment action," *Elgin*, 567 U.S. at 21, then neither the Board nor the Federal Circuit may review his claims.

18

Cir. 1992) (accepting jurisdiction over federal employees' Privacy Act challenge to their employer's disclosure of employment records without considering CSRA preclusion).

Similarly, the DOE's refusal to return Manivannan's personal property is not an employment action subject to the Board's jurisdiction. He expressly alleges that these personal belongings were "not derived in any way from his employment by the DOE." J.A. 191. Even construing the CSRA's language broadly, we fail to see how an employer's alleged conversion of a former employee's personal property, unrelated to the latter's federal employment, constitutes a "disciplinary or corrective action," 5 U.S.C. § 2302(a)(2)(A)(iii), a "significant change in duties, responsibilities, or working conditions," *id.* § 2302(a)(2)(A)(xii), or any other employment action set out in the statute.[6]

---

[6] The Government relies on a nonprecedential decision from our Court to argue that all Manivannan's claims belong before the Protection Board. *See Yu v. U.S. Dep't of Veterans Affs.*, 528 F. App'x 181 (3d Cir. 2013). Yet that case did not address whether an employer's allegedly unlawful disclosure of employment records is within the CSRA's exclusive purview, nor did it consider an employer's alleged refusal to allow for the return of an employee's personal property. *See id.* at 184 (considering whether an employer's post-termination decisions to withhold research equipment and funds secured by the terminated employee and destroy research samples were personnel decisions covered by the CSRA).

19

\*     \*     \*

While we affirm the Magistrate Judge's dismissal of claims tethered to employment conduct covered by the CSRA (Counts II, IV, V, and VI), we reverse as to those claims based on the DOE's alleged cooperation with state prosecutors and failure to return Manivannan's personal property (Counts I, III, and VII).

The surviving Privacy Act and Tort Claims Act counts may well fail for reasons unrelated to CSRA preclusion. But because they do not concern employment actions covered by that statute, Manivannan was entitled to present them to a federal district court. We remand for the Magistrate Judge to consider whether they can withstand the other arguments raised in the Government's motion to dismiss.