# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-3066

———————————————

Sandeep Thigulla; Sarvani Thigulla

*Plaintiffs - Appellants*

v.

Ur Jaddou, Director, U.S. Citizenship and Immigration Services

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Nebraska - Lincoln

——————————

Submitted: November 16, 2023
Filed: March 5, 2024

——————————

Before COLLOTON, BENTON, and SHEPHERD, Circuit Judges.

——————————

BENTON, Circuit Judge.

Sandeep and Sarvani Thigulla—lawful nonimmigrant workers with temporary work authorization—seek to become lawful permanent residents (LPRs) (get a "green card"). As the last step to become LPRs, the Thigullas sought approval of their Form I-485 applications with the U.S. Citizenship and Immigration Services (USCIS). The Department of State signaled that adjudication of their applications

was imminent in September 2022. However, in October 2022, the Department of State decreased the number of applications it would adjudicate at that time. The Thigullas sought a temporary restraining order against the Director of USCIS, compelling the prompt adjudication of their applications under the Administrative Procedure Act. The Government moved to dismiss for a lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The district court[1] denied a temporary restraining order—finding a lack of irreparable harm and a low likelihood of success on the merits. (It also denied the Government's motion to dismiss, opting to address the Government's subject-matter jurisdictional concerns "in due time.") The Thigullas appeal the denial of the temporary restraining order. This court dismisses the case for a lack of subject-matter jurisdiction.

## I.

The Thigullas are citizens and nationals of India. Sandeep Thigulla has been in the United States since 2010. They applied for adjustment of status, trying to change their status *from* lawful nonimmigrant workers on a series of short-term work authorizations, *to* LPRs with green cards. Foreign nationals seeking an LPR visa must generally follow a three-step process: by obtaining (1) a labor certification by the Department of Labor; (2) an approved I-140 immigrant petition from USCIS; and (3) an approved Form I-485, Application to Register Permanent Residence or Adjust Status from USCIS. *See **Mantena v. Johnson***, 809 F.3d 721, 724-25 (2d Cir. 2015) (describing the three-step process); **8 U.S.C. § 1255(a)**; **8 C.F.R. §§ 204.5(n)(1), 245.2(a)(2)(i), 245.2(a)(5)(ii)**. This case involves the final step of the process: the adjudication of the application to adjust status.

The final step, due to the limited number of available LPR visas, cannot take place until the proper category of visa is available for the applicant. *See **8 U.S.C. § 1255(a)***. "Because there are limits on the number of such visas in each category and from each country, immigrants must often wait many years for a permanent

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

residency visa, especially if they are from a country, like India, that sends a large number of immigrants to the United States." *Mantena*, 809 F.3d at 725. An applicant's priority date—the spot in the visa queue—determines when an applicant has access to available visas. To receive a visa, an applicant must have both a priority date that is "current" or "immediately available" and an approved status adjustment application. The Government does not approve (or deny) pending status adjustment applications until an immigrant visa number has been allocated, which occurs when an applicant's priority date is current or immediately available. The Thigullas call this the Adjudication Hold Policy. *See* **8 C.F.R. § 245.2(a)(5)(ii)** (describing the Adjudication Hold Policy).

The Thigullas' priority date is January 17, 2014. In September 2022, the Department of State, in its monthly visa bulletin, listed the Thigullas' desired class of visa (chargeable to India) as current or immediately available for applicants with a priority date before December 1, 2014. *See* **Department of State**, *The Visa Bulletin for September 2022*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2022/visa-bulletin-for-september-2022.html (last visited Feb. 21, 2024). However, in the October 2022 bulletin, the Department of State "retrogressed" that priority date to April 1, 2012. *See* **Department of State**, *The Visa Bulletin for October 2022*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-october-2022.html (last visited Feb. 21, 2024).[2] By changing the priority date, USCIS delayed adjudicating the Thigullas' status adjustment applications.

The Thigullas sued to compel USCIS to promptly adjudicate their status adjustment applications, arguing that the decision to delay adjudicating them, pursuant to the Adjudication Hold Policy, violates congressional intent. The

---

[2]The current priority date for the Thigullas' desired category of visa, chargeable to India has retrogressed further to March 1, 2012. *See* **Department of State**, *The Visa Bulletin for October 2022*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-february-2024.html (last visited Feb. 21, 2024).

Thigullas moved for a temporary restraining order, claiming irreparable harm without USCIS's approval. The Government moved to dismiss for a lack of subject-matter jurisdiction. The district court denied a temporary restraining order citing the lack of evidence of irreparable harm and a low likelihood of success on the merits. The district court also denied the Government's motion to dismiss as moot without addressing the court's subject-matter jurisdiction. The Thigullas appeal the denial of a temporary restraining order.

II.

This court first addresses the issue of subject-matter jurisdiction. "[A] federal court always has jurisdiction to determine its own jurisdiction." *United States v. Harcevic*, 999 F.3d 1172, 1178 (8th Cir. 2021), *quoting United States v. Ruiz*, 536 U.S. 622, 628 (2002).[3]

"In this context, the term 'jurisdiction' refers to" this court's subject-matter jurisdiction—"the courts' statutory or constitutional *power* to adjudicate the case." *Harcevic*, 999 F.3d at 1178, *quoting United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis in original). Subject-matter jurisdiction, because "it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." *Cotton*, 535 U.S. at 630, *citing Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908). "Unlike most arguments, challenges to subject-matter jurisdiction may be raised by the defendant 'at any point in the litigation,' and courts must consider them *sua sponte*." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019), *quoting Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

---

[3]In considering this issue, this court has reviewed briefing on jurisdiction in a related case from the same district. *See Chalamalesetty v. Jaddou*, No. 4:22-CV-3182, 2023 WL 6387976 (D. Neb. Sept. 29, 2023), *appeal filed*, No. 23-3216 (8th Cir. Oct. 4, 2023).

The requirement that jurisdiction be established as a threshold matter "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Patchak v. Zinke*, 583 U.S. 244, 254 (2018) (plurality opinion), *quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), *quoting Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884). *See Patchak*, 583 U.S. at 254 (plurality opinion), *quoting Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514-15 (1869) ("Because jurisdiction is the "power to declare the law" in the first place, 'judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer.'").

Congress, in 8 U.S.C. § 1252(a)(2)(B)(ii), enacted a jurisdictional bar on review of discretionary decisions of the Attorney General under § 1255(a):

> no court shall have jurisdiction to review--
>
> > (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> >
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter to be in the discretion* of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

**8 U.S.C. § 1252(a)(2)(B)** (emphasis added). Two elements trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar: (1) a decision or action by the Attorney General or the Secretary of Homeland Security and (2) statutorily specified discretion under Subchapter II of Chapter 12 of Title 8 (8 U.S.C. §§ 1151–1381) (Subchapter II). *See Kucana v. Holder*, 558 U.S. 233, 253 (2010) (Alito, J., concurring) ("The phrase 'under this subchapter' refers to Subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1381 . . . .").

Unlike some arguments that must be raised by the parties at certain times, "[j]urisdictional bars, however, 'may be raised at any time' and courts have a duty to consider them *sua sponte*." **Wilkins v. United States**, 598 U.S. 152, 157 (2023), *citing* **Henderson v. Shinseki**, 562 U.S. 428, 434 (2011). *See* **Patel v. Garland**, 596 U.S. 328, 338-46 (2022) (repeatedly categorizing § 1252(a)(2)(B) as a "jurisdictional bar"). *Cf.* **Irshad v. Johnson**, 754 F.3d 604, 607 (8th Cir. 2014), *citing* **Steel Co.**, 523 U.S. at 97 n. 2 (holding this court may raise the issue of "statutory jurisdiction" sua sponte). This court now considers the jurisdictional bar sua sponte.

## III.

The Thigullas seek review under the Administrative Procedure Act, as a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." **5 U.S.C. § 702**. The APA's right to judicial review does not apply when "statutes preclude judicial review." **5 U.S.C. § 701(a)(1)**. There is "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." **Kucana**, 558 U.S. at 251. The presumption can be overcome by "clear and convincing evidence" of congressional intent to preclude judicial review. **Reno v. Catholic Soc. Servs., Inc.**, 509 U.S. 43, 64 (1993), *quoting* **Abbott Labs. v. Gardner**, 387 U.S. 136, 141 (1967).

"The plaintiff bears the burden of establishing subject matter jurisdiction." **Hilger v. United States**, 87 F.4th 897, 899 (8th Cir. 2023), *citing* **Herden v. United States**, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc).

The Thigullas argue the Adjudication Hold Policy goes against congressional intent of how to administer the green card process. "Congressional intent is discerned primarily from the statutory text." **CTS Corp. v. Waldburger**, 573 U.S. 1, 12 (2014). Congress ordained the green card process in 8 U.S.C. § 1255(a), the section of the Immigration and Nationality Act governing nonimmigrants seeking

LPR status adjustments.  The Adjudication Hold Policy was promulgated under the authority granted in § 1255(a).  *See* **8 C.F.R. § 245.2**.  The Thigullas invoke the text of that statute:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner *may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

**8 U.S.C. § 1255(a)** (emphasis added).  Section 1255(a)'s text establishes the Attorney General's "discretion" both to adjust applicants' statuses, even after the applicants meet the statutory requirements, and to enact "such regulations as he may prescribe" to administer this process.[4]

First, the USCIS decided to delay adjudicating the Thigullas' status adjustment applications. Section 1252(a)(2)(B)(i) bars a court's jurisdiction to review a judgment granting a status adjustment application.  *See Patel*, 596 U.S. at 338 ("Section 1252(a)(2)(B)(i) . . . prohibits review of any judgment regarding the granting of relief under § 1255").  In the same way, § 1252(a)(2)(B)(ii) bars this court's jurisdiction to review the decision to delay adjudicating the status adjustment application in September 2022, if that decision is specified under Subchapter II to be in the discretion of the Attorney General.  *See Rajasekaran v. Hazuda*, 815 F.3d

---

[4]"Section 1255(a) provides that 'the Attorney General' is the government official with the authority to adjust status, 'but Congress has transferred the adjudication functions of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate' at the U.S. Citizenship and Immigration Services." *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 n.2 (11th Cir. 2011), *quoting Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1251 n. 6 (11th Cir. 2008).

1095, 1099-1100 (8th Cir. 2016) (holding § 1252(a)(2)(B)(ii) bars judicial review of the second of the three steps in the green card process, the revoking of I-140 form, because that action was within the discretion of the Attorney General). The Thigullas seek review of that decision through APA review.

Second, interpreting § 1252(a)(2)(B)(ii), the Supreme Court held that, by Subchapter II, "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana*, 558 U.S. at 247.

By stating the Attorney General, in his "discretion," "may" adjust status and "may" prescribe regulations, Congress, in Section 1255(a), set out the discretionary authority. *See Kucana*, 558 U.S. at 247 n.13, *quoting Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) ("'may' suggests discretion"). In addition, the two uses of "may" bracket the word "discretion." *See Yates v. United States*, 574 U.S. 528, 543 (2015) ("we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'"). Based on the text, congressional intent is clear: the decision to delay adjudicating the Thigullas' status adjustment applications, based on the creation of the Adjudication Hold Policy, was within the Attorney General's discretionary authority.

True, *Kucana* held § 1252(a)(2)(B)'s bar on judicial review applies only to Attorney General determinations made discretionary by statute, not to determinations declared discretionary by the Attorney General himself through regulation. *Kucana*, 558 U.S. at 252-53. Here, this case is not a review of a regulation. The discretion does not come from the regulation setting out the Adjudication Hold Policy. In fact, that regulation has no discretion. *See* **8 C.F.R. § 245.2(a)(5)(ii)**. This case addresses whether the Attorney General acted within his discretionary, statutory authority by implementing and executing the Adjudication Hold Policy. This court agrees with the Thigullas' claim that this case "is a pure

question of statutory interpretation." Applying § 1252(a)(2)(B)(ii), this court held: "If the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable." *Rajasekaran*, 815 F.3d at 1099, *quoting* *Abdelwahab v. Frazier*, 578 F.3d 817, 821 n.6 (8th Cir. 2009) (dismissing the case for a lack of subject-matter jurisdiction after holding Congress had barred this court's jurisdiction).

The text of § 1252(a)(2)(B)(ii) and § 1255(a) is clear and convincing evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a), like the Adjudication Hold Policy. *See* *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (discussing § 1252(a)(2)(B), "Of course *many* provisions of [the act creating Subchapter II] are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation.") (emphasis in original); *see also* *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018), *quoting* *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'").

Beyond the text, the primary source for congressional intent, the Thigullas offer extratextual sources to undermine the clear textual grant of discretionary authority for the Adjudication Hold Policy.

The Thigullas maintain, by looking to § 1255(b), that the structure of § 1255 undermines the discretionary authority of § 1255(a), claiming Congress assumed that when an applicant files for a status adjustment, a visa number would necessarily be available. To the contrary, "§ 1255(b) assumes only that a visa number will be available at the time an application is *approved*." *Babaria v. Blinken*, 87 F.4th 963, 977 (9th Cir. 2023) (emphasis in original). Section 1255(b) states:

> Upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's lawful admission for permanent residence as of the [approval] date ..., and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under [8 U.S.C. §§ 1152 and 1153] within the class to which the alien is chargeable for the fiscal year then current.

**8 U.S.C. § 1255(b)**. The statute does not, as the Thigullas contend, require a visa to be available when an applicant files a status adjustment application, but only when it is approved.

> The statute is agnostic as to why a visa must be available when adjustment of status is approved—whether because the visa number must be allocated at the time of the application or because the application cannot be approved until a visa number is available. By expressing no preference and authorizing the Attorney General to issue "such regulations as he may prescribe," [] § 1255(a), Congress plainly left the decision in the government's hands.

*Babaria*, 87 F.4th at 977-78; *see Morton v. Ruiz*, 415 U.S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.").

Citing legislative history, the Thigullas argue § 1255(a) should be read to ban the Adjudication Hold Policy because Congress enacted and then abolished the requirement that there be a visa immediately at approval. "Judges interpret laws rather than reconstruct legislators' intentions. Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intent." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 452-53 (1987) (Scalia, J., concurring); *see United States ex rel. Cairns v. D.S. Med. LLC*, 42 F.4th 828, 836 (8th Cir. 2022), *quoting Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) ("[L]egislative history is not the law."). Additionally, while Congress did not mandate the Adjudication Hold Policy (even though it did in the past), under the clear text of § 1255(a), Congress left such a policy to the discretion of the Attorney General.

The Thigullas' arguments "do not overcome Congress's broad prohibition of judicial review in § 1252(a)(2)(B)(ii), nor 'the tradition of agency discretion over internal procedures.'" *Rajasekaran*, 815 F.3d 1095, 1099 (8th Cir. 2016), *quoting Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004). In § 1252(a)(2)(B)(ii), Congress barred this court's jurisdiction to review discretionary actions of the Attorney General under § 1255(a).

True, § 1252(a)(2)(D) cabins the jurisdictional bars of § 1252(a)(2)(B) by allowing "review of constitutional claims or questions of law raised upon a *petition for review* filed with an appropriate court of appeals in accordance with this section." **8 U.S.C. § 1252(a)(2)(D)** (emphasis added). However, while the Thigullas' claims raise a question of law, this case does not concern a petition for review—the mechanism used to appeal an agency order to this court. *See* **Fed. R. App. P. 15** (describing the requirements of a petition for review). Instead, the Thigullas sued to compel agency action under the APA, not to consider a claim or question in a petition for review.

Because Congress has barred judicial review in this case, this court must dismiss for a lack of subject-matter jurisdiction. *See Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449-50 (1850) (holding that "Courts created by statute can have no jurisdiction but such as the statute confers" and if no statute confers jurisdiction, the court must dismiss); *Patchak*, 583 U.S. at 252-54 (plurality opinion) (discussing the limits of Congressional ability to "'chang[e] the law' for the purpose of Article III" by stripping federal courts' jurisdiction) ("Congress generally does not infringe the judicial power when it strips jurisdiction because, with limited exceptions, a congressional grant of jurisdiction is a *prerequisite* to the exercise of judicial power."); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021) ("Nor does Article III confer on federal judges some amorphous power to supervise the operations of government . . . .") (citations omitted); *Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792) (establishing the principle that the duties of Article III are limited to exercising the judicial power).

-11-

\* \* \* \* \* \* \*

This case is dismissed for a lack of subject-matter jurisdiction and remanded to the district court for proceedings consistent with this opinion.

_____