**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2195
_____

KRISHNA KISHORE GEDA; CHAYA DURGA
SRUTHI KEERTHI NUNNA,
                                        Appellants

v.

DIRECTOR UNITED STATES CITIZENSHIP AND IM-
MIGRATION SERVICES;
UNITED STATES CITIZENSHIP AND IMMIGRA-
TION SERVICES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:22-cv-4764)
District Judge: Honorable Madeline Cox Arleo
_____

Argued April 11, 2024

Before: RESTREPO, MATEY, and MCKEE, *Circuit
Judges*

(Filed: January 23, 2025)

Brad Banias                    **[ARGUED]**
BANIAS LAW, LLC
602 Rutledge Avenue
Charleston, SC 29403
    *Counsel for Appellants*

Brian M. Boynton, Principal Deputy Assistant Attorney
William C. Peachey, Director, District Court Section

Aaron Goldsmith, Senior Litigation Counsel
Jordan K. Hummel, Trial Attorney        **[ARGUED]**
U.S. DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
DISTRICT COURT SECTION
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
    *Counsel for Appellees*

Hope Lu
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
    *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

**RESTREPO**, *Circuit Judge*.

Appellants Krishna Kishore Geda and Chaya Durga Sruthi Keerthi Nunna (collectively, the "Gedas") are married Indian nationals lawfully residing in the United States on employment-based nonimmigrant visas.[1] They have filed and await approval of their I-485 "green card" applications seeking an adjustment of status to lawful permanent residents. After waiting in line for almost eight years, the Gedas thought they reached the front and filed their applications—only to be told two years later that their applications were put on hold because

---

[1] Nonimmigrant visas authorize foreign nationals to enter or remain in the United States on a temporary basis, while immigrant visas are issued to foreign nationals intending to permanently reside in the United States.

the required immigrant visa was not available. Frustrated by the delay, they sued the United States Citizenship and Immigration Services and its Director in her official capacity ("USCIS") bringing claims for unlawful withholding and unreasonable delay under the Administrative Procedure Act, 5 U.S.C. § 551, et seq. ("APA"). The Gedas asked the District Court to declare the Government's policy postponing adjudication of their green card applications (the "Adjudication Hold Policy") unlawful, enjoin the Government from applying the Adjudication Hold Policy to them and enter an order compelling adjudication. The District Court dismissed the claims for lack of subject-matter jurisdiction. Because the Adjudication Hold Policy is the kind of discretionary decision that Congress has shielded from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii), we will affirm the District Court's order.

## I. BACKGROUND

### A. Adjustment of Status Under the INA

The Immigration and Nationality Act (INA), codified as 8 U.S.C. §§ 1101–1537, governs how noncitizens obtain visas[2] to enter and work in the United States. Through the INA, Congress also granted the Attorney General the discretion to adjust the status of certain noncitizens[3] to lawful permanent resident status. This discretionary authority has been delegated to the Secretary of Homeland Security and his or her delegate at USCIS. *See* 6 U.S.C. § 271(b)(5); *see also id.* §§ 455(c), 557.

As relevant here, Section 1255(a) of the INA provides:

> The status of an alien who was inspected and admitted or paroled into the United States or the status

---

[2] A visa is a documented authorization issued by the Department of State ("DOS") to noncitizens seeking to enter the United States.

[3] The INA uses the term "alien," which it defines as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). We use the term "noncitizen" to mean any person as defined in § 1101(a)(3).

of any other alien having an approved petition for classification as a VAWA self-petitioner *may* be adjusted by the Attorney General, in his *discretion* and *under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added). Under one such regulation "prescribe[d]" by the Government, a green card application "shall not be approved until an immigrant visa number[4] has been allocated by the Department of State." 8 C.F.R. § 245.2(a)(5)(ii). The Government uses § 245.2(a)(5)(ii)—the visa availability requirement—to ensure it complies with the INA's caps that limit the number of immigrant preference visas that can be allocated during each fiscal year based on visa type and country of origin. *See* 8 U.S.C. §§ 1151, 1152, 1153.

Upon approval of a green card application, USCIS records the noncitizen's lawful admission for permanent residence "as of the [approval] date," and the DOS "reduce[s] by one the number of the preference [immigrant] visas authorized to be issued under sections 1152 and 1153 . . . for the fiscal year then current." 8 U.S.C. § 1255(b). In effect, § 1255(b) tasks DOS with tracking immigrant visa availability as the fiscal year progresses and 8 C.F.R. § 245.2(a)(5)(ii) is the regulation that prevents adjudication of a green card application if an immigrant visa cannot be allocated. Under this system, an immigrant visa

---

[4] A visa number is a budgetary device employed by the DOS to avoid exceeding the worldwide and per-country limits on preference immigrant visas established by Congress. *See* 8 U.S.C. §§ 1151–52.

must be available both when the green card application is filed (per § 1255(a)) and when it is approved (per § 245.2(a)(5)(ii)).

### B. Visa Availability and the Adjudication Hold Policy

A noncitizen seeking an immigrant preference visa—the ones subject to the statutory caps—must be sponsored by a relative or employer. A noncitizen seeking lawful permanent status through employer sponsorship must receive an employment-based preference visa ("EB visa"). For EB visas, a sponsoring employer files an immigrant visa petition on the noncitizen's behalf. *See* 8 C.F.R. § 204.5(a). An approved immigrant petition is required for a green card. *See id.* § 245.2(a)(2)(i)(B); *see also* 8 U.S.C. § 1255(a). Neither sponsorship nor an approved immigrant petition guarantees allocation of an EB visa. The overall yearly cap for EB visas is 140,000 (plus rollover family-sponsorship visas from the year before)*, see* 8 U.S.C. § 1151(d), and there are percentage caps on that broader limit based on country of origin and preference category, [5] *see id.* §§ 1152, 1153.

The Department of State allocates EB visas on a "first-come, first-served" basis. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 48 (2014) (plurality opinion). Petitions for EB visas receive a "priority date" marking a noncitizen's spot in line. For EB-2 and EB-3 visas, the priority date is usually the date that the Department of Labor accepts for filing the sponsoring

---

[5] The number of EB visas available each fiscal year is divided among five preference categories based on skill level and educational background. *See* U.S. Dep't of State – Bureau of Consular Affairs, *Employment-Based Immigrant Visas*, https://travel.state.gov/content/travel/en/us-visas/immigrate/employment-based-immigrant-visas.html#overview [https://perma.cc/ZLC8-M9VE]. EB-2 visas require advanced degrees or exceptional abilities in sciences, arts, or business. *Id.* EB-3 visas are for professionals whose jobs require at least an undergraduate (or its foreign equivalent) degree, skilled workers and unskilled worders. *Id.* Geda meets the requirements for both an EB-2 visa and an EB-3 visa.

employer's application for labor certification.[6]  EB visas chargeable to any given country and preference category combination must be allocated in the order of their priority dates. *See* 8 U.S.C. § 1153(e)(1); 22 C.F.R. § 42.51(b).

For countries like India that have more petitions than available visas, the Department of State projects a cutoff date for each preference category and publishes its projections in a monthly Visa Bulletin.  Once an applicant's priority date becomes "current"—that is, it falls before the published cutoff date—a visa is considered "immediately available," and the applicant may file a green card application.  *See* 8 U.S.C. § 1255(a).  The cutoff date, or "Final Action Date," generally advances over time.  But when actual demand outpaces projections, the Department of State revises the Final Action Date to an earlier date under a practice known as "retrogression."[7] When an applicant files an application, but retrogression renders his or her priority date no longer current before adjudication, USCIS holds the application in abeyance per the Adjudication Hold Policy.  The applicant retains his or her spot in line—retrogression does not impact an applicant's priority date.  But retrogression does delay adjudication for applicants that thought they had reached the front.

### C. The Gedas

Mr. Geda's employer filed for a permanent labor certification on December 18, 2012, setting that date as the Gedas' priority date.  That same day, the Department of Labor issued the

---

[6]  To file an EB visa petition, most sponsoring employers must first obtain certification from the Department of Labor that (1) insufficient qualified U.S. workers are available and (2) the noncitizen's employment will not negatively affect wages and working conditions.  *See* 8 U.S.C. § 1182(a)(5)(A)(i); 8 C.F.R. § 204.5(a)(2), (c); *see also* 8 U.S.C. § 1153(b)(3)(C).  For EB visas that do not require a labor certification, the priority date is the date the immigrant petition is filed.  *See* 8 C.F.R. § 204.5(d).

[7]  *See* U.S. Citizenship and Immigration Serv, *Visa Retrogression*, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression [https://perma.cc/HYK8-HUDX].

labor certification, and Mr. Geda's employer filed an immigrant visa petition with USCIS. Mr. Geda's petition was later approved as an EB-2 visa petition for foreign nationals with advanced degrees or exceptional ability. For almost eight years, Mr. Geda and Mrs. Nunna waited in line as USCIS worked through the backlog of approved petitions.

In October 2020, the Gedas—still waiting in line for an EB-2 visa—realized their priority date would be current for an EB-3 visa, which Mr. Geda also qualified for. Mr. Geda's employer then concurrently filed a petition for an EB-3 visa along with green card applications for Mr. Geda and Mrs. Nunna. USCIS subsequently approved Mr. Geda's petition for an EB-3 visa. While the green card applications were pending, the wait time for EB-2 visas once again became shorter than the EB-3 wait time. Under USCIS policy,[8] Mr. Geda requested a "transfer of underlying basis" for the pending green card applications to his previously approved EB-2 petition. App. 2.

According to the September 2022 Visa Bulletin, the Final Action date for EB-2 applicants was December 1, 2014—making the Gedas' priority date "current" and rendering them eligible to receive EB-2 visas and have their green card applications adjudicated. But two setbacks for the Gedas quickly followed. First, on September 6, 2022, DOS notified USCIS that there were no available EB-2 visas for the rest of the 2022 fiscal year. Still, the Gedas anticipated visa availability (and the subsequent adjudication of their green card applications) at the beginning of the 2023 fiscal year the following month. But then the October Visa Bulletin retrogressed the Final Action date for EB-2 applicants by more than two years to April 1, 2012, rendering the Gedas' priority date no longer "current." Without a "current" priority date, the DOS could not allocate an EB-2 visa to Mr. Geda. And so pursuant to the Adjudication Hold Policy, the USCIS placed the Gedas' pending green card applications on hold.

---

[8] USCIS policy allows foreign nationals with multiple approved EB visa petitions based on different preference categories to choose which preference category to use for their pending green card applications.

The Gedas claim that the last time USCIS applied this policy, similarly situated applicants waited eight to nine years for final adjudication. Understandably frustrated, the Gedas sued to compel USCIS to promptly adjudicate their green card applications and allocate EB visas, arguing that the Adjudication Hold Policy violates congressional intent. In their amended complaint, the Gedas asserted two unlawful withholding claims and one unreasonable delay claim under the APA. Section 706(1) of the APA allows courts to compel agency action if it is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Gedas sought an order (1) invalidating the Adjudication Hold Policy; (2) enjoining USCIS from enforcing the policy; and (3) compelling adjudication of their applications within thirty days. At its core, the Gedas' contention is that the Adjudication Hold Policy is unlawful because it constitutes USCIS's continued enforcement of a repealed version of 8 U.S.C. § 1255(a) that required an immigrant visa to be "immediately available . . . at the time [an] application is *approved*." Joint Resolution of July 14, 1960, Pub. L. No. 86-648, § 10, 74 Stat. 504, 505 (emphasis added). In 1976, Congress amended §1255(a) to remove that requirement and, instead, require a visa be "immediately available . . . at the time [an] application is *filed*." Immigration and Nationality Act Amendments of 1976, Pub. L. No. 94-571 § 6, 90 Stat. 2703, 2706 (emphasis added). USCIS moved to dismiss, arguing the District Court lacked subject-matter jurisdiction. The District Court agreed and dismissed the claims.

## II. STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 1291 and review the district court's dismissal for lack of subject-matter jurisdiction de novo. *Manivannan v. U.S. Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022). "A jurisdictional challenge may be facial (in that it attacks the complaint without disputing its allegations) or factual (by presenting competing facts undermining federal jurisdiction)." *Id.* (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). Because this challenge "is facial, we accept the complaint's well pled allegations as true" and review them "in the light most favorable to the plaintiff[s]." *Id.* (internal quotations omitted) (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

8

## III. JURISDICTION

We first address the issue of subject-matter jurisdiction, as the Supreme Court has instructed that "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998)). This Court has an "independent obligation to determine whether subject-matter jurisdiction exists[.]" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

The District Court explained the Gedas' claims "lack[ed] subject matter jurisdiction because the APA does not confer jurisdiction under 5 U.S.C. § 706(1) upon matters within the discretion of USCIS and DOS at issue here." App. 4. "Although it waives sovereign immunity, *see* 5 U.S.C. § 702, and provides several causes of action, *see, e.g.*, *id.* § 706, the Administrative Procedure Act includes no independent grant of subject-matter jurisdiction[.]" *Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021) (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977)). Thus, the issue under the APA goes not to jurisdiction but to the sufficiency of the pleadings. We will affirm the District Court's dismissal, but we need not reach whether the Gedas stated a claim that satisfies the requirements of § 706(1) in doing so. Rather we hold as a threshold matter that the INA precludes § 1331 federal question jurisdiction here. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *see also* § 5 U.S.C. § 701(a)(1) (barring review under the APA where "statutes preclude judicial review").

### A. Preclusion of Review Under 8 U.S.C. § 1252(a)(2)(B)(ii)

"District courts have jurisdiction to review agency action under 28 U.S.C. § 1331, 'subject only to preclusion-of-review statutes created or retained by Congress.'" *Bakran v. Sec'y, U.S. Dep't Homeland Sec.*, 894 F.3d 557, 562 (3d Cir. 2018) (quoting *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 126 (3d Cir. 2012)). One such preclusion-of-review provision in the INA states:

> Notwithstanding any other provision of law (statutory or

9

nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter to be in the discretion* of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphasis added). The phrase "under this subchapter" refers to Subchapter II in Chapter 12 of Title 8 of the United States Code, which includes 8 U.S.C. § 1255, the statute at issue here. Our precedent instructs that this jurisdictional bar "applies not to all decisions the [Secretary] is entitled to make, but to a narrower category of decisions [or actions] where Congress has taken the additional step to specify that the sole authority for the action is in the [Secretary]'s discretion." *Bakran*, 894 F.3d at 562 (quoting *Alaka v. Att'y Gen.*, 456 F.3d 88, 95 (3d Cir. 2006)); *see also Soltane v. U.S. Dep't of Just.*, 381 F.3d 143, 146 (3d Cir. 2004) ("The key to § 1252(a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute.").

## B. Judicial Review of the Adjudication Hold Policy

The Gedas challenge the USCIS's reliance on the Adjudication Hold Policy to delay a decision on their applications. But that decision—whether *and* how to adjust their status—is explicitly committed to the Secretary's discretion, which it has delegated to USCIS. *See* 8 U.S.C. § 1255(a) ("The status of an alien . . . *may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence[.]") (emphasis added). Since the Secretary "*may*" adjust an applicant's status "*in his discretion*" and "*under such regulations as he may prescribe*," *id.* (emphasis added), § 1255(a) vests the Secretary and his or her delegate at USCIS "with considerable leeway in establishing the process" by which an adjustment of status is adjudicated. *Babaria v. Blinken*, 87 F.4th 963, 977 (9th Cir. 2023), *cert. denied sub nom. Babaria v. Jaddou*, No. 23-1268, 2024 WL 4426634 (U.S. Oct. 7, 2024); *see also Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024) ("Section 1255(a)'s text establishes the [Secretary's] 'discretion' both to adjust applicants' statuses, even after the applicants meet the statutory requirements, and to enact 'such regulations as he may prescribe' to administer this process."). Except for § 1255's three prerequisites, "Congress expressly manifested its intent that the [Secretary] regulate the process by which status will be adjusted[.]" *Ruiz-Diaz v. United States*, 618 F.3d 1055, 1061 (9th Cir. 2010).

Congress thus "specified," as required by § 1252(a)(2)(B)(ii), that actions taken to regulate the application and adjudication process are within the Secretary's discretion and disputes over this exercise of power fall outside the subject-matter jurisdiction of federal courts. *See Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005) ("The statutory language [of § 1252(a)(2)(B)(ii)] is uncharacteristically pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised *under this statute*,' but specifically to 'authority for which is *specified under this subchapter* to be in the discretion of the Attorney General.'"). Section 1255(a) is a classic grant of discretion because it provides the Secretary discretion over not only the final decision but the entire process for reaching that decision. *Cf. Bouarfa v. Mayorkas*, No. 23-583, 2024 WL 5048700, at *5 (U.S. Dec.

10, 2024) (describing the discretion granted through 8 U.S.C. § 1155 as "quintessential" because the Secretary can exercise it at any time and for any reason).

The Gedas' challenge to the Adjudication Hold Policy is an issue of first impression for this Court. That said, we have addressed the reviewability of procedures set forth to exercise statutorily granted discretion. In *Bakran*, we considered an INA provision barring citizens convicted of a "specified offense against a minor" from filing a visa petition on behalf of a relative "unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." 894 F.3d at 560 (quoting 8 U.S.C. § 1154(a)(1)(A)(viii)(I)). The appellant in *Bakran* did not challenge the "no risk" determination itself—which is clearly unreviewable—but the two USCIS memos that set forth the process for making that determination, which he argued violated the APA. *Id.* at 561. In reversing the district court, we held that § 1252(a)(2)(B)(ii) precluded subject-matter jurisdiction over the appellant's APA claims that USCIS exceeded its statutory authority. *Id.* at 563. Because the exercise of discretion was "inextricably intertwined" with the process set out by the challenged memos, we were "precluded from reviewing both the decision *and* the process for reaching it." *Id.* (emphasis added).

The jurisdictional bar is even more straightforward here. We are presented with a discretion-granting statute that explicitly provides the Secretary the discretion to "prescribe" the regulations that guide its exercise of the discretionary authority. 8 U.S.C. § 1255(a). Thus, we lack jurisdiction to review both the decision to put the Gedas' applications on hold *and* the "inextricably intertwined" process "prescribed" by the Secretary for reaching that decision.[9]

---

[9] The Gedas contend their claims present "a pure question of statutory interpretation." Appellants' Br. at 11. While 8 U.S.C. § 1252(a)(2)(D) preserves judicial review of "constitutional claims or questions of law[,]" those issues must be "raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. §

12

Two of our sister circuits have squarely addressed this question in a precedential opinion and reached the same conclusion. In *Thigulla*, the appellants sued to compel USCIS to adjudicate their green card applications, arguing that the decision to delay adjudication violated congressional intent. 94 F.4th at 773. The Eighth Circuit considered the subject-matter jurisdiction issue sua sponte. *Id.* at 773–74. In holding that it lacked jurisdiction, the *Thigulla* court identified "[t]he text of § 1252(a)(2)(B)(ii) and § 1255(a)" as providing the requisite "evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a), like the Adjudication Hold Policy." *Id.* at 776. Addressing the same legislative history argument the Gedas advance here—that the Adjudication Hold Policy is unlawful because Congress previously required visa availability at approval and later amended § 1255(a) to remove that requirement—the Eighth Circuit noted that "while Congress did not mandate the Adjudication Hold Policy (even though it did in the past), under the clear text of § 1255(a),

---

1252(a)(2)(D). Even if the Gedas raised a colorable question of law, they failed to do so on a petition for review before this Court—placing these claims outside of Congress's carveout to this jurisdictional bar. *See Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 206 n.16 (3d Cir. 2006).

To be clear, we do not reach the issue of whether Gedas' substantive argument—that the Government's reading of § 1255 as requiring visa availability for adjudication violates congressional intent—is reviewable, and if so, how the Gedas could seek review. But Congress can expressly limit and channel judicial review, and the Supreme Court has found that a similar statutory scheme "preserved a 'latent right to judicial review.'" *Nakka v. U.S. Citizenship & Immigr. Servs.*, 111 F.4th 995, 1014 (9th Cir. 2024) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 54 (1993)). This "is the system Congress has created and 'we cannot legislate to correct it.'" *Jilin Pharm. USA, Inc.*, 447 F.3d at 205 n.11 (quoting *NVE Inc. v. Dep't of Health and Human Servs.*, 436 F.3d 182, 194 (3d Cir. 2006)); *see also Patel v. Garland*, 596 U.S. 328, 346 (2022) ("[I]t would be difficult to maintain that this consequence conflicts with the statutory structure [of § 1252(a)(2)(B)][.]").

Congress left such a policy to the discretion of the [Secretary]." *Id.* at 777.

The Fifth Circuit followed suit in *Cheejati v. Blinken*, explaining:

> Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General: applications for adjustment of status are adjudicated "in [the Attorney General's] discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). And we recently held, albeit in an unpublished case, that the pace of USCIS's adjudication is left to its discretion, with "no clear mandate" requiring USCIS to act within a certain timeframe. *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023). Accordingly, the discrete acts undertaken to render an adjustment decision and the timing of those acts are determined by the Attorney General in his discretion, and that discretionary action cannot be reviewed by federal courts. 8 U.S.C. §§ 1252(a)(2)(B)(ii), 1255.

106 F.4th 388, 394 (5th Cir. 2024).

Faced with the same issue, two other sister circuits rejected the APA claims without addressing the threshold issue of subject matter jurisdiction. The First Circuit proceeded directly to the merits "assum[ing] there [were] no statutory bars to the exercise of jurisdiction" because it "resolve[d] the merits in the

14

defendants' favor." *Gupta v. Jaddou*, 118 F.4th 475, 482 (1st Cir. 2024). Similarly, the Ninth Circuit affirmed the district court's denial of injunctive relief without addressing any jurisdictional defects. *See Babaria*, 87 F.4th at 972. Because both our Court and the District Court lack subject-matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii), we "must merely note the jurisdictional defect and dismiss the suit." *Larsen v. Senate*, 152 F.3d 240, 245 (3d Cir. 1998).

### C. The Gedas' Counterarguments

The Gedas offer four arguments against this jurisdictional bar, none of which persuade us against our holding. First, they suggest that § 1252(a)(2)(B)(ii) does not apply because Section 1252 is entitled "Judicial Review of Orders of Removal." Relying on titles can be precarious. "A title is, almost necessarily, an abridgment," and so "matters in the text . . . are frequently unreflected in the headings." *Yates v. United States,* 574 U.S. 528, 559 (2015) (Kagan, J., dissenting) (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528 (1947)). That is why "[f]or interpretive purposes, [titles] are of use only when they shed light on some ambiguous word or phrase. They are but tools available for resolution of doubt. But they cannot undo or limit that which the text makes plain." *Brotherhood of R.R. Trainmen*, 331 U.S. at 529. Here, the plain text refutes the title—§ 1252(a)(2)(B) states federal question jurisdiction is lacking "regardless of whether the judgment, decision, or action is made in removal proceedings." § 1252(a)(2)(B).

Statutory history confirms this reading. As originally enacted, § 1252(a)(2)(B) provided that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review" any judgment, action or decision listed in subsections (i) and (ii). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009–546, 3009–607; 8 U.S.C. § 1252(a)(2)(B) (2004). From 1996 to 2005, there was some disagreement among federal courts as to whether § 1252(a)(2)(B) applied outside the context of removal proceedings. Relying on the section's title, some courts took the narrower view. *See ANA Int'l Inc. v. Way*, 393 F.3d 886, 891 n.3 (9th Cir. 2004) (noting the split in authority and listing cases). In response, Congress amended § 1252(a)(2)(B)

15

in the REAL ID Act of 2005, adding the language "regardless of whether the judgment, decision, or action is made in removal proceedings." Pub. L. No. 109–13, 119 Stat. 302, 305.

It seems clear that Congress added that clause to confirm that, despite the section's title, § 1252(a)(2)(B)'s jurisdiction limitation applies to challenges arising outside the context of removal proceedings. *See Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1142 n.13 (11th Cir. 2009) (per curiam); *see also* Michael J. Garcia et al., Cong. Rsch. Serv., RL32754, *Immigration: Analysis of the Major Provisions of H.R. 418, the REAL ID Act of 2005* 13–14 (May 9, 2005). The Supreme Court suggested the same in *Patel*. 596 U.S. at 346 ("[F]oreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief.").

Second, the Gedas argue that § 1252(a)(2)(B)(ii) does not apply to adjustment of status applications because the prior subsection, § 1252(a)(2)(B)(i), mentions "judgment[s] regarding the granting of relief under . . . [§] 1255[.]" Because subsection (i) refers to § 1255, the Gedas contend that a finding that subsection (ii) applies to adjustment of status applications violates the canon of statutory interpretation that the specific governs the general. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). This argument is misplaced. It ignores the specific inclusion of decisions under § 1255 in §1252(a)(2)(B)(ii), which covers "any other decision or action . . . the authority for which is *specified under this subchapter*." *See Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010) ("'[T]his subchapter' refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration.'"). This reading is reinforced by § 1252(a)(2)(B)(ii)'s explicit exclusion of decisions involving the "granting of relief under section 1158(a)." If Congress intended an exception to decisions or actions under § 1255, it would have included one in the text of § 1252(a)(2)(B)(ii).

Third, the Gedas point to the presumption in favor of judicial review of "agency action" under *Kucana*. 558 U.S. at 251. The Gedas are correct that we should only read a statute to limit

jurisdiction if there is "clear and convincing evidence" of congressional intent. *Id.* at 252 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)). "But that presumption 'may be overcome by specific language' in a provision or evidence 'drawn from the statutory scheme as a whole.'" *Patel*, 596 U.S. at 347 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)). Only "when a statute is silent[,]" does the presumption apply. *Id.* at 346. If "the statute is clear, we have no reason to resort to the presumption of reviewability." *Id.* at 347; *see also Bouarfa*, 2024 WL 5048700, at *7 (refusing to apply the presumption in analyzing whether § 1252(a)(2)(B)(ii) barred review of a visa revocation under 8 U.S.C. § 1155).

The statutes here are clear. The "specific language" of § 1252(a)(2)(B)(ii) and § 1255(a) provide "clear and convincing evidence" that Congress declined to permit review of the Gedas' claims. *See Thigulla*, 94 F.4th at 776. Congress could have provided for judicial review of the regulations, policies and procedures used to implement § 1255 as it did with § 1225(b)(1)—but it chose not to. *See* § 1252(e)(3)(A)(ii). Instead, Congress "trigger[ed] the application of § 1252(a)(2)(B)(ii)" through "the explicit use of language granting discretion[.]" *Alaka*, 456 F.3d at 98.

Finally, the Gedas contend that § 1252(a)(2)(B)(ii) only precludes review of decisions or actions, whereas they challenge the USCIS's "inaction" on green card applications under the Adjudication Hold Policy. Put another way, the Gedas challenge the lack of a final decision, which they argue is not itself a decision. This argument rests on faulty logic. Interpreting the phrase "decision or action" in § 1252(a)(2)(B)(ii) to include the final decision on the relief sought would render the entirety of subparagraph (i) superfluous as related to § 1255(a). *See* § 1252(a)(2)(B)(i) (barring judicial review of "any judgment regarding the granting of relief under section . . . 1255[.]"); *see also Patel*, 596 U.S. at 339 ("§ 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' [under § 1255(a)] but also any judgment *relating* to the granting of relief.").

The Adjudication Hold Policy reflects a decision by USCIS about how to exercise its discretion to adjust a noncitizen's

17

status to lawful permanent resident. Whether the Adjudication Hold Policy is the most sensible approach to managing pending green card applications and a visa backlog is not up to this Court. In § 1255, Congress granted the Secretary broad discretionary authority to control the process through which it would use its discretion to adjust a noncitizen's status. The Adjudication Hold Policy is an exercise of that statutorily specified discretion, so we are jurisdictionally barred by § 1252(a)(2)(B)(ii) from reviewing Gedas' claims.

When jurisdiction is lacking, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). The District Court lacked subject-matter jurisdiction, and so does this Court. Only the executive and legislative branches can provide the relief the Gedas seek.

## IV. CONCLUSION

The order of the District Court will be affirmed.

18